UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA GOMES VILELA,<br><br>Petitioner,<br><br>v.<br><br>TIMOTHY S. ROBBINS, Field Office Director of the Los Angeles Field Office of U.S. Immigration and Customs Enforcement; TODD M. LYONS, Acting Director of U.S. Immigration and Customs Enforcement; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; KRISTI NOEM, Secretary of the United States Department of Homeland Security; CHRISTOPHER CHESTNUT, Warden, California City Corrections Center; and PAMELA BONDI, Attorney General of the United States,<br><br>Respondents. | No. 1:25-cv-01393-KES-HBK (HC)<br><br>ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION<br><br>Doc. 7 |

Petitioner Sandra Gomes Vilela is an asylum-seeker from Brazil who entered the United States in October 2024. After entry, she was detained by immigration officials but then released pending her removal proceedings after officials determined that she was neither a danger nor a flight risk. Since then, she has lived with her sister in California, become gainfully employed, and maintained a clean criminal record. On October 6, 2025, Immigration and Customs Enforcement ("ICE") agents re-detained petitioner when she appeared for a scheduled check-in.

On October 20, 2025, petitioner filed a first amended petition for writ of habeas corpus, Doc. 9, and an amended motion for temporary restraining order, in which she seeks her

1

immediate release from detention and an injunction prohibiting the government from re-detaining her unless it first provides her with a hearing before a neutral adjudicator, Doc. 7.  Respondents filed an opposition on October 27, 2025, Doc. 11, and petitioner filed a reply on November 2, 2025, Doc. 12.  For the reasons explained below, petitioner's motion for temporary restraining order, which the Court converts to a motion for preliminary injunction, is granted.

**I.     Background**

Petitioner fled Brazil to pursue asylum in the United States.  Doc. 1 at ¶ 1; Doc. 11-1, Medina Decl. at ¶ 7.  In early October 2024, she crossed the southern border and was detained by immigration officials shortly after entry.  Doc. 11-1, Ex. 1.  Petitioner was initially issued a notice and order of expedited removal pursuant to 8 U.S.C. § 1225(b)(1), but after she informed the immigration officials that she had a fear of persecution if she returned to Brazil, they issued her a notice to appear for removal proceedings.[1]  Doc. 11-1, Medina Decl. at ¶ 7.  After she had been detained for nearly one month, immigration officials decided to release petitioner on her own recognizance pending removal proceedings.  Doc. 11-1, Medina Decl. at ¶ 9; Doc. 9 at ¶ 1.  The regulations that authorize immigration authorities to release a noncitizen on her own recognizance require that the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding."  8 C.F.R. § 1236.1(c)(8).  "Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."  *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

Upon release, petitioner was placed in the Alternatives to Detention ("ATD") Program, through which she was required to complete phone and video check-ins through a mobile phone application.  Doc. 11-1, Medina Decl. at ¶ 9; Doc. 9 at ¶ 25; Doc. 7-2, Gomes Vilela Decl. at ¶ 3.  Respondents assert that petitioner missed a check-in on January 24, 2025.  Doc. 11-1, Medina Decl. at ¶ 10.  Respondents also assert that on three occasions when petitioner was instructed to

---

[1] The notice to appear for removal proceedings states that the "Section 235(b)(1) [8 U.S.C. § 1225(b)(1)] order was vacated . . . ."  Doc. 11-1, Ex. 2.

complete a self-report check-in, she informed the Intensive Supervision Appearance Program ("ISAP") officer that she had moved, but that petitioner did not tell ISAP in advance of the move. Doc. 11-1, Medina Decl. at ¶¶ 10–13. The only exhibit in the record which sets out any condition of petitioner's release is the Form 71-015A, ICE Alternatives to Detention Participant Enrollment Form, Doc. 11-1, Ex. 2, and that document does not state that petitioner was required to inform ICE in advance of an address change. Petitioner asserts that she complied with all requirements and informed ISAP officers whenever she moved to a new address. Doc. 7-2, Gomes Vilela Decl. at ¶¶ 3–5. She also asserts that she was never instructed to seek approval from ISAP before changing addresses. *Id.*

While in the United States, petitioner lived in the Bay Area of California with her sister. Doc. 7-2, Gomes Vilela Decl. at ¶ 1. She and her sister worked together, cleaning homes. *Id.* She indicates that she became an active member of her community and attended church. *Id.* ¶ 2. Her first immigration court hearing was scheduled for January 2026, and she was in the process of seeking an attorney to represent her and file an asylum application on her behalf. *Id.* ¶ 3. Respondents do not dispute that petitioner maintained a clean criminal record while in the United States. *See* Doc. 11-1, Ex. 3; Doc. 9 at ¶ 1.

On October 6, 2025, petitioner's assigned ISAP officer informed her that she would need to report in person to the ISAP office. Doc. 7-2, Gomes Vilela Decl. at ¶ 4. When she arrived, ISAP instructed her to report to the ICE office instead. *Id.* When she appeared at the ICE office, ICE agents arrested her. *Id.* ¶ 5. ICE transported her to California City Corrections Center, a detention center, where she remains detained. *See id.* ¶¶ 5–6.

**II.     Conversion to a Motion for Preliminary Injunction**

When the Court set a briefing schedule on the motion, it ordered the parties to state their position on whether the motion for temporary restraining order should be converted to a motion for preliminary injunction. Doc. 8. Neither party objected to converting the motion to one for a preliminary injunction. *See* Doc. 11 at 7 n.3. Given that the standard for issuing a temporary restraining order is the same as for a preliminary injunction, *see Stuhlbarg Int'l Sales Co. v. John D. Bush & Co.,* 240 F.3d 832, 839 n.7 (9th Cir. 2001), and respondents had notice and

opportunity to respond in opposition, petitioner's motion is converted to a motion for preliminary injunction.

### III.     Legal Standard

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008)). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20 (citing *Munaf*, 553 U.S. at 689–90; *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 542 (1987); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–12 (1982)). "Likelihood of success on the merits is a threshold inquiry and is the most important factor." *Simon v. City & Cnty. of San Francisco*, 135 F.4th 784, 797 (9th Cir. 2025) (quoting *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)). "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).

### IV.     Discussion

#### a. Petitioner is Likely to Succeed on the Merits.

Because civil immigration detention is typically justified only when a noncitizen presents a risk of flight or danger to the community, *see Zadvydas v. Davis*, 533 U.S. 678, 690 (2001), *Padilla v. ICE*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023), petitioner argues that the Due Process Clause bars the government from re-detaining her without first providing a hearing where it must prove she is a flight risk or danger. Doc. 7 at 4–10. Petitioner's due process claim is analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of*

4

*Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

### 1. Petitioner Possesses a Protected Liberty Interest.

A protected liberty interest may arise from a conditional release from physical restraint. *Young v. Harper*, 520 U.S. 143, 147–49 (1997). Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. *See id.* (Due Process requires pre-deprivation hearing before revocation of preparole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In *Morrissey*, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, her "condition is very different from that of confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole will be revoked only if [she] fails to live up to the parole conditions." *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted). Therefore, a parolee possesses a protected interest in her "continued liberty." *Id.* at 481–84.

Petitioner's release on her own recognizance pending her removal proceedings is similar. Among other things, it allowed her to live in the United States with her sister, become an active member of her community, and become gainfully employed.

Respondents argue that petitioner does not have a liberty interest because 8 U.S.C. § 1225(b) mandates that she be detained. *See* Doc. 11 at 7–9. This argument is unpersuasive

5

because the record shows that the government treated petitioner as subject to 8 U.S.C. § 1226(a), which does not mandate detention, after it released her in 2024. Petitioner's notice to appear for removal proceedings states that the "Section 235(b)(1) [8 U.S.C. § 1225(b)(1)] order was vacated . . . ." Doc. 11-1, Ex. 2. Deportation officer Samuel Medina confirms that petitioner was released on her own recognizance, Doc. 11-1, Medina Decl. at ¶ 9—which means that she was released pursuant to § 1226(a). *See Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007) ("It is apparent that the INS used the phrase 'release on recognizance' as another name for 'conditional parole' under § 1226(a)."). Additionally, when it re-detained her on October 6, 2025, ICE provided petitioner a warrant which states that it was issued "pursuant to section[] 236" of the INA (which is codified at § 1226). Doc. 11-1, Ex. 3. Moreover, respondents argue in their opposition that petitioner was not paroled pursuant to 8 U.S.C. § 1182(d)(5)(A). *See* Doc. 11 at 1. Parole pursuant to 8 U.S.C. § 1182(d)(5)(A) is the only mechanism by which "aliens detained under § 1225(b) may be released." *Jennings v. Rodriguez*, 583 U.S. 281, 300 (2018). Respondents' attempt to then switch course and say that § 1225(b) is the appropriate detention authority is perplexing, as it is contradicted by their own statements, arguments, and exhibits in the record.

Respondents contend that immigration officials' release of petitioner pursuant to § 1226(a) was based on the government's prior incorrect interpretation of that statute, and that the government has since determined that § 1225(b) applies. Doc. 11 at 5–6. Even if the government were correct that § 1225(b), by its terms, could apply to petitioner, the government previously represented to petitioner, by releasing her on her own recognizance, that she had been released pursuant to 8 U.S.C. § 1226(a). Doc. 11-1, Medina Decl. at ¶ 9. This was an "implicit promise" that her release would "be revoked only if [she] fail[ed] to live up to the [release] conditions," as in *Morrissey*. *Morrissey*, 408 U.S. at 482; *see also Johnson v. Williford*, 682 F.2d 868, 873 & n.3 (9th Cir. 1982) (holding that it would be "inconsistent with fundamental principles of liberty and justice" to re-incarcerate a mistakenly released prisoner who had readjusted to society and complied with the terms of release). Thus, the argument that "a mistakenly released [person] does not have a legitimate claim of entitlement to freedom [under the Due Process Clause] . . .

6

cannot be squared with established law." *Hurd v. Dist. of Columbia, Gov't*, 864 F.3d 671, 682 (D.C. Cir. 2017). Even if § 1225(b) *did* apply, petitioner has a protected liberty interest based on the government's prior release of her pursuant to § 1226.[2]

While respondents do not argue that petitioner is a flight risk or danger, they assert that petitioner violated the terms of her release by missing a check-in and by failing to seek prior approval before moving to a new address. *See* Doc. 11 at 1; Doc. 11-1, Medina Decl. at ¶¶ 10–13. Petitioner disputes these assertions. Her exhibits state that she complied with all requirements of release, kept ICE informed of her whereabouts, and was never told that she had to seek advance authorization before moving. *See* Doc. 7-2, Gomes Vilela Decl. at ¶¶ 3–5. Moreover, petitioner subsequently appeared for two in-person check-ins as required, *see* Doc. 11-1, Medina Decl. at ¶¶ 13–14; Doc. 7-2, Gomes Vilela Decl. at ¶¶ 3–5, which would undermine an argument that she is a flight risk. In any event, petitioner was released on her own recognizance pursuant to § 1226. Doc. 11-1, Medina Decl. at ¶ 9. Pursuant to § 1226(a), petitioner would be entitled to a bond hearing, and any custody redetermination would have to be based on whether petitioner is "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006).

While respondents assert that ICE arrested petitioner for those technical violations, Doc. 11-1, Medina Decl. at ¶ 14, they do not argue that a missed check-in or failure to seek advance approval to move means that petitioner is a flight risk or danger to the community. *See* Doc. 8. Other courts have rejected the argument that "ICE [can] re-detain those released for purely technical violations, like being [] late to a check-in," without regard to whether that technical violation means that one is a flight risk or danger. *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *8 (N.D. Cal. July 17, 2025); *see Espinoza v. Kaiser*, No. 1:25-CV-01101 JLT SKO, 2025 WL 2581185, at *12–14 (E.D. Cal. Sept. 5, 2025) (finding that petitioner who was redetained after missing a check-in completely and failing to update ICE with

---

[2] Once the government "elect[s] to proceed . . . under § 1226, [it] cannot [] reverse course and institute § 1225 . . . proceedings." *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263, at *4 (N.D. Cal. Aug. 21, 2025).

7

a change of address had protected liberty interest which required post-deprivation bond hearing). Under § 1226(a), petitioner was entitled to have a custody redetermination based on whether she is a flight risk or danger. *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). Given the time she spent at liberty following the government's determination that she was not a flight risk or danger, as well as the government's implicit promise that any custody redetermination would be based on those same criteria, petitioner has a protected "interest in remaining at liberty unless [she] no longer meets those criteria." *Espinoza v. Kaiser*, No. 1:25-CV-01101 JLT SKO, 2025 WL 2581185, at *13 (E.D. Cal. Sept. 5, 2025) (quoting *Pinchi v. Noem*, No. 5:25-CV-05632-PCP, 2025 WL 2084921, at *4 (N.D. Cal. July 24, 2025)).

Respondents next argue, citing *Thuraissigiam* and *Landon*, that petitioner has no due process rights and that her rights are limited to those provided by statute. Doc. 11 at 9 (citing *DHS v. Thuraissigiam*, 591 U.S. 103, 139–40 (2020), and *Landon v. Plasencia*, 459 U.S. 21, 32 (1982)). This argument is unpersuasive. First, it fails to appreciate the distinction between persons already located inside the United States, like petitioner, and persons attempting to enter the United States, like the petitioners in *Thuraissigiam* and *Landon*. "It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (citing *United States v. Verdugo–Urquidez,* 494 U.S. 259, 269 (1990); *Johnson v. Eisentrager,* 339 U.S. 763, 784 (1950)). "But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Id.*; *see Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) ("[I]t is well-established that the Due Process Clause stands as a significant constraint on the manner in which the political branches may exercise their plenary authority.").

Second, respondents' argument misconstrues the nature of the challenge that petitioner brings in this case, which is a challenge to her detention. *Thuraissigiam* held that a petitioner who was stopped at the border did not have any due process rights *regarding admission into* the United States. *Thuraissigiam*, 591 U.S. at 107; *see also Landon*, 459 U.S. at 32 ("("[A]n alien

8

seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application . . . ."). However, petitioner challenges her re-detention without a hearing; she does not challenge in this habeas action any determination regarding her admissibility. *See Padilla v. ICE*, 704 F. Supp. 3d 1163, 1170–72 (W.D. Wash. 2023) (discussing *Thuraissigiam* and explaining the distinction between a challenge to admission and a challenge to detention); *Hernandez*, 872 F.3d at 981 ("[T]he government's discretion to [detain] non-citizens is always constrained by the requirements of due process.").

"Although the Supreme Court has described Congress's power over the 'policies and rules for exclusion of aliens' as 'plenary,' and held that this court must generally 'defer to Executive and Legislative Branch decisionmaking in that area,' it is well-established that the Due Process Clause stands as a significant constraint on the manner in which the political branches may exercise their plenary authority"—through detention or otherwise. *Hernandez*, 872 F.3d at 990 n.17 (citing *Kleindienst*, 408 U.S. at 769; *Zadvydas*, 533 U.S. at 695). The Due Process Clause protects petitioner, a person inside the United States, from unlawful detention. *See Zadvydas*, 533 U.S. at 693.

The Court finds that petitioner has a protected liberty interest in her release. *See Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest). The Court must therefore determine what process is due before the government may terminate her liberty.

### 2. A Pre-Deprivation Bond Hearing Is Required.

Due process "is a flexible concept that varies with the particular situation." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). The procedural protections required in a given situation are evaluated using the *Mathews v. Eldridge* factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through

9

>   the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)); *see Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).[3]

Turning to the first factor, petitioner has a significant private interest in remaining free from detention. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Petitioner had been out of custody for nearly a year, and during that time, lived with her sister, worked, and developed ties to the community. Her detention denies her that freedom.

Second, "the risk of an erroneous deprivation [of liberty] is high" where, as here, "[the petitioner] has not received any bond or custody redetermination hearing." *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas*, 533 U.S. at 690; *Padilla*, 704 F. Supp. 3d at 1172. Petitioner has no criminal history. *See* Doc. 8-2, Ex. 5. Although, as noted above, respondents assert that petitioner violated her release conditions, *see*

---

[3] Respondents argue that the *Mathews* factors do not apply because the Supreme Court has not utilized those factors in evaluating a due process challenge to immigration detention. *See, e.g.*, *Demore v. Kim*, 538 U.S. 510 (2003). This argument is unpersuasive for two reasons. First, *Demore* involved a facial challenge to 8 U.S.C. § 1226(c). *See id.*; *Pham v. Becerra*, 717 F. Supp. 3d 877, 885 (N.D. Cal. 2024) (explaining that *Demore* involved a facial challenge). Here, in contrast, petitioner raises an as-applied challenge to her re-detention without a bond hearing. The *Mathews* factors are more appropriately utilized in an as-applied challenge because, as the Ninth Circuit has noted, "*Mathews* remains a flexible test" that accounts for the competing interests of an individual detainee and the government. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–07 (9th Cir. 2022). Second, respondents argue that the *Mathews* factors are inapplicable without proposing an alternative test to evaluate the due process issue. *See* Doc. 11 at 8. Courts in this circuit regularly employ the *Mathews* factors to evaluate the due process argument that petitioner makes here. *See e.g.*, *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263, at *4–6 (N.D. Cal. Aug. 21, 2025); *Pinchi v. Noem,* No. 25-CV-05632-RMI (RFL), 2025 WL 1853763, at *1 (N.D. Cal. July 4, 2025). Respondents do not offer a persuasive reason to depart from this practice.

1  Doc. 11-1, Medina Decl. at ¶¶ 10–13, petitioner disputes this, Doc. 7-2, Gomes Vilela Decl. at
2  ¶¶ 3–5.  Moreover, respondents do not argue that petitioner is a flight risk or danger based on any
3  such violation, and they acknowledge that petitioner subsequently showed up for two in-person
4  check-ins as required.  *Id.*  No neutral arbiter has determined whether the facts show that
5  petitioner is a flight risk or danger to the community.  Given the absence of any procedural
6  safeguards to determine if her detention was justified, "the probable value of additional
7  procedural safeguards, i.e., a bond hearing, is high."  *A.E.*, 2025 WL 1424382, at *5.
8        Third, although the government has a strong interest in enforcing the immigration laws,
9  the government's interest in detaining petitioner without a hearing is "low."  *Ortega v. Bonnar*,
10  415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Doe v. Becerra*, No. 2:25-cv-00647-DJC-DMC, 2025
11  WL 691664, at *6 (E.D. Cal. March 3, 2025).  In immigration court, custody hearings are routine
12  and impose a "minimal" cost.  *Doe*, 2025 WL 691664, at *6.  "If the government wishes to re-
13  arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in
14  doing so without a hearing is low."  *Ortega*, 415 F. Supp. 3d at 970.
15        On balance, the *Mathews* factors show that petitioner is entitled to a bond hearing, which
16  should have been provided before petitioner was detained.  "'[T]he root requirement' of the Due
17  Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is deprived
18  of any significant protected interest.'"  *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542
19  (1985) (quoting *Boddie v. Connecticut,* 401 U.S. 371, 379 (1971)); *see Zinermon*, 494 U.S. at 127
20  ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some
21  kind of a hearing *before* the State deprives a person of liberty . . . .").[4]  The Supreme Court has

---

[4] Respondents argue that, if the Court finds that petitioner is subject to § 1226(a), petitioner should not receive a pre-deprivation hearing because § 1226(a) does not provide for one. Doc. 11 at 11.  The Court noted, at the first step of the analysis, that the government released petitioner pursuant to § 1226, and that provided her with a protected liberty interest.  At the second step, the Court must determine what procedures are due to sufficiently protect that liberty interest. Respondents cite *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1203 (9th Cir. 2022), for the proposition that § 1226(a) provides constitutionally adequate procedures to prevent the risk of an erroneous deprivation of liberty.  But the petitioner in *Rodriguez Diaz* received those protections; petitioner has not.  Nor do respondents appear to have any intention of providing petitioner with the procedural protection of a bond hearing unless the Court intervenes: as respondents point out in their opposition, ICE has adopted a policy that § 1226(a) does not apply to noncitizens like

held that due process requires a pre-deprivation hearing before those released on parole from a criminal conviction can have their bond finally revoked. *See Morrissey*, 408 U.S. at 480–86.[5] The same is true for those subject to revocation of probation. *Gagnon v. Scarpelli*, 411 U.S. at 782. Numerous district courts have held that these principles extend to the context of immigration detention. *See, e.g.*, *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263, at *4–6 (N.D. Cal. Aug. 21, 2025); *Garcia*, 2025 WL 1927596, at *5; *Pinchi v. Noem*, No. 25-CV-05632-RMI (RFL), 2025 WL 1853763, at *1 (N.D. Cal. July 4, 2025); *Ortega*, 415 F. Supp. 3d at 970; *Doe*, 2025 WL 691664, at *6; *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025); *Romero v. Kaiser*, No. 22-cv-02508-TSH, 2022 WL 1443250, at *4 (N.D. Cal. May 6, 2022); *Vargas v. Jennings*, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020).

With these considerations in mind, petitioner is likely to succeed on the merits of her claim.

---

petitioner. *See* Doc. 11 at 6 ("In view of legal developments, the government has determined that this interpretation was incorrect, and that Section 1225 is the sole applicable immigration detention authority for *all* applicants for admission."). The Court must decide what procedural protections are due under these circumstances.

[5] Respondents argue that reliance on *Morrissey* is misplaced because *Morrissey* arose in the context of parole from a criminal conviction, not release from immigration detention. Doc. 11 at 10. But just like a parolee, noncitizens are entitled to the protections of the Due Process Clause. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("'[T]he Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent."); *see Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process"). While it is true, as the government points out, that Congress may make "rules [as to noncitizens] that would be unacceptable if applied to citizens," *Demore v. Kim*, 538 U.S. 510, 521 (2003), legislatures may also make rules as to convicted criminals that would be unacceptable if applied to law-abiding citizens, *see Morrissey*, 408 U.S. at 482 ("[T]he State properly subjects [parolees] to many restrictions not applicable to other citizens . . . ."). As other courts have recognized in rejecting a similar argument, "[i]f a parolee serving out a sentence for a violent crime, and subject to highly restrictive conditions of release, has a sufficiently strong liberty interest[] to be entitled to a hearing prior to re-incarceration, then a non-citizen freed from civil detention on bond likely has a similar entitlement." *See Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *6 (N.D. Cal. July 17, 2025). "Given the civil context [of immigration detention], [petitioner's] liberty interest is arguably greater than the interest of parolees in *Morrissey*." *Ortega*, 415 F. Supp. 3d at 970.

### b. Petitioner Will Face Irreparable Harm Without Injunctive Relief.

Turning to the second *Winters* factor, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury." *Hernandez*, 872 F.3d at 994 (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (quoting Wright, Miller, & Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)). Given the Court's conclusion that petitioner is likely to succeed on the merits of her claim that her re-detention without a bond hearing violates the Due Process Clause, petitioner faces irreparable harm absent a temporary restraining order.

### c. Balance of Equities and Public Interest

When the government is the nonmoving party, "the last two *Winter* factors merge." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (internal citations omitted). Although the government has a strong interest in enforcing the immigration laws, the issue in this case is not whether the government can detain petitioner at all, but whether it can detain petitioner *without a bond hearing*. Faced with a choice "between [this minimally costly procedure] and preventable human suffering," as discussed above, the Court concludes "that the balance of hardships tips decidedly in [petitioner's] favor." *Hernandez*, 872 F.3d at 996 (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)).

The public interest also weighs in petitioner's favor. "The public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz*, 2025 WL 1676854, at *3 (citing *Jorge M.F. v. Wilkinson*, No. 21-CV-01434-JST, 2021 WL 783561, at *3) (N.D. Cal. Mar. 1, 2021); *see also Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 838 (9th Cir. 2020) ("It is always in the public interest to prevent the violation of a party's constitutional rights.") (citing *Padilla*, 953 F.3d at 1147–48).

///

///

      **d. Remedy**

The Court finds that the requirements for issuing a preliminary injunction are met. Petitioner's immediate release is required to return her to the status quo ante—"the last uncontested status which preceded the pending controversy." *Pinchi*, 2025 WL 1853763, at *3; *Kuzmenko v. Phillips*, No. 2:25-cv-00663-DJC-AC, 2025 WL 779743, at *2 (E.D. Cal. Mar. 10, 2025); *see also Valdez v. Joyce*, 25 Civ. 4627, 2025 WL 1707737, at *5 (S.D.N.Y. June 18, 2025) (ordering immediate release of unlawfully detained noncitizen); *Ercelik v. Hyde*, No. 1:25-CV-11007-AK, 2025 WL 1361543, at *15–16 (D. Mass. May 8, 2025) (same); *Günaydın v. Trump*, No. 25-CV-01151, 2025 WL 1459154, at *10–11 (D. Minn. May 21, 2025) (same). Respondents are ordered to release petitioner immediately. Respondents may not re-detain petitioner unless the government proves by clear and convincing evidence at a bond hearing before a neutral decisionmaker that petitioner is a flight risk or danger to the community.

**V.     Conclusion and Order**

Accordingly, petitioner's motion for a preliminary injunction, Doc. 7, is GRANTED. Respondents are ORDERED to release petitioner immediately. Respondents are ENJOINED AND RESTRAINED from re-detaining petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that her physical custody is legally justified.

The portion of the Court's October 20, 2025 minute order, Doc. 8, regarding the removal or transfer of petitioner is vacated as moot.

The bond requirement of Federal Rule of Civil Procedure 65(c) is waived. Courts regularly waive security in cases like this one. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011); *Garcia*, 2025 WL 1676855, at *3; *Pinchi*, 2025 WL 1853763, at *4.

///

///

///

///

    Respondents may file an additional brief related to the merits of the petition within 30 days, and petitioner may file a reply brief within 15 days of the filing of respondents' brief. Alternatively, the parties may stipulate to a different briefing schedule or to submitting the petition on the merits based on the current record.

IT IS SO ORDERED.

Dated:  November 6, 2025

UNITED STATES DISTRICT JUDGE