**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SANDRA GOMES VILLELA,<br><br>        Petitioner,<br><br>        v.<br><br>TIMOTHY S. ROBBINS, Field Office Director of the Los Angeles Field Office of U.S. Immigration and Customs Enforcement; TODD M. LYONS, Acting Director of U.S. Immigration and Customs Enforcement; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; KRISTI NOEM, Secretary of the United States Department of Homeland Security; CHRISTOPHER CHESTNUT, Warden, California City Corrections Center; and PAMELA BONDI, Attorney General of the United States,<br><br>        Respondents. | Case No.: 1:25-cv-01393-KES-SKO (HC)<br><br>FINDINGS AND RECOMMENDATIONS TO GRANT PETITION FOR WRIT OF HABEAS CORPUS<br><br>[21-DAY OBJECTION DEADLINE] |

      Petitioner Sandra Gomes Villela is an asylum-seeker from Brazil proceeding with counsel with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. After entry to the United States in October 2024, she was detained by immigration officials but then released pending her removal proceedings after officials determined that she was neither a danger nor a flight risk. Since then, she has lived with her sister in California, become gainfully employed, and maintained a clean criminal

record. On October 6, 2025, Immigration and Customs Enforcement ("ICE") agents re-detained Petitioner when she appeared for a scheduled check-in.

On October 20, 2025, Petitioner filed a first amended petition for writ of habeas corpus and an amended motion for temporary restraining order, in which she sought her immediate release from detention and an injunction prohibiting the Government from re-detaining her unless it first provides her with a hearing before a neutral adjudicator. (Docs. 7, 9.) After briefing by the parties, on November 6, 2025, the District Court granted a preliminary injunction and ordered Petitioner's release. (Doc. 13.) The Court directed the parties to notify the Court if they wished to submit additional briefing on the petition.  On December 5, 2025, the parties filed a joint stipulation indicating their intent to submit the petition on the current record. (Doc. 14.) For the reasons explained below, the Court will recommend the petition be GRANTED.

**I.     BACKGROUND**

For judicial efficiency, the Court recites the factual background previously set forth in the order granting preliminary injunction:

> Petitioner fled Brazil to pursue asylum in the United States. Doc. 1 at ¶ 1; Doc. 11-1, Medina Decl. at ¶ 7. In early October 2024, she crossed the southern border and was detained by immigration officials shortly after entry. Doc. 11-1, Ex. 1. Petitioner was initially issued a notice and order of expedited removal pursuant to 8 U.S.C. § 1225(b)(1), but after she informed the immigration officials that she had a fear of persecution if she returned to Brazil, they issued her a notice to appear for removal proceedings. [Fn.1] Doc. 11-1, Medina Decl. at ¶ 7. After she had been detained for nearly one month, immigration officials decided to release Petitioner on her own recognizance pending removal proceedings. Doc. 11-1, Medina Decl. at ¶ 9; Doc. 9 at ¶ 1. The regulations that authorize immigration authorities to release a noncitizen on her own recognizance require that the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). "Release [therefore] reflects a determination by the Government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).
>
> > [Fn.1] The notice to appear for removal proceedings states that the "Section 235(b)(1) [8 U.S.C. § 1225(b)(1)] order was vacated . . . ." Doc. 11-1, Ex. 2.
>
> Upon release, Petitioner was placed in the Alternatives to Detention ("ATD") Program, through which she was required to complete phone and video check-ins through a mobile phone application. Doc. 11-1, Medina Decl. at ¶ 9; Doc. 9 at ¶ 25; Doc. 7-2, Gomes Vilela Decl. at ¶ 3. Respondents assert that Petitioner missed a check-in on January 24, 2025. Doc. 11-1, Medina Decl. at ¶ 10. Respondents also assert that on three occasions when Petitioner was instructed to complete a self-report check-in, she

informed the Intensive Supervision Appearance Program ("ISAP") officer that she had moved, but that Petitioner did not tell ISAP in advance of the move. Doc. 11-1, Medina Decl. at ¶¶ 10–13. The only exhibit in the record which sets out any condition of Petitioner's release is the Form 71-015A, ICE Alternatives to Detention Participant Enrollment Form, Doc. 11-1, Ex. 2, and that document does not state that Petitioner was required to inform ICE in advance of an address change. Petitioner asserts that she complied with all requirements and informed ISAP officers whenever she moved to a new address. Doc. 7-2, Gomes Vilela Decl. at ¶¶ 3–5. She also asserts that she was never instructed to seek approval from ISAP before changing addresses. *Id*.

While in the United States, Petitioner lived in the Bay Area of California with her sister. Doc. 7-2, Gomes Vilela Decl. at ¶ 1. She and her sister worked together, cleaning homes. *Id*. She indicates that she became an active member of her community and attended church. *Id*. ¶ 2. Her first immigration court hearing was scheduled for January 2026, and she was in the process of seeking an attorney to represent her and file an asylum application on her behalf. *Id*. ¶ 3. Respondents do not dispute that Petitioner maintained a clean criminal record while in the United States. *See* Doc. 11-1, Ex. 3; Doc. 9 at ¶ 1.

On October 6, 2025, Petitioner's assigned ISAP officer informed her that she would need to report in person to the ISAP office. Doc. 7-2, Gomes Vilela Decl. at ¶ 4. When she arrived, ISAP instructed her to report to the ICE office instead. *Id*. When she appeared at the ICE office, ICE agents arrested her. *Id*. ¶ 5. ICE transported her to California City Corrections Center, a detention center, where she remains detained. *See id*. ¶¶ 5–6.

(Doc. 13 at 2-3.)

## II.    JURISDICTION AND LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). A district court may grant a writ of habeas corpus when the Petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order." Lopez-Marroquin v. Barr, 955 F.3d 759, 759 (9th Cir. 2020) (citing Singh v. Holder, 638 F.3d 1196, 1211–12 (9th Cir. 2011)).

## III.   DISCUSSION

Civil immigration detention is typically justified only when a noncitizen presents a risk of flight or danger to the community.  See Zadvydas v. Davis, 533 U.S. 678, 690 (2001); Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023).  Petitioner contends that the Due Process Clause bars the Government from re-detaining her without first providing a hearing where it must prove she is a

flight risk or danger. (Doc. 9 at 9.) In their response to the petition, Respondents do not contend that the Government made an evidence-based determination that Petitioner was a danger, or a flight risk, or that she had violated her conditions of release. Nor do they allege that Petitioner had committed a crime or that they had otherwise made a determination that Petitioner was dangerous. Respondents instead urge the Court to adopt reasoning consistent with the new DHS guidance—that Petitioner's recent re-detention is mandatory under section 1225(b)(2)(A). Accordingly, before turning to the standard due process analysis, the Court will address the threshold matter of whether Petitioner's re-detention is properly understood to be authorized by section 1225(b)(2)(A) as Respondents contend or under section 1226(a) as Petitioner contends.

When first presented with the Government's new interpretation of section 1225(b)(2)(A), some courts described this read of the statute as "novel." See, e.g., Barrera v. Tindall, No. 3:25-CV-541-RGJ, 2025 WL 2690565, at *5 (W.D. Ky. Sept. 19, 2025). But only months later, after being almost universally rejected in cases decided by district courts from different districts in the country,[1] this

---

[1] See, e.g., Souza v. Robbins, No. 1:25-CV-01597-DJC-JDP, 2025 WL 3263897, at *2 (E.D. Cal. Nov. 23, 2025); Garcia-Donis v. Noem, No. 3:25-CV-03281-BTM-BJW, 2025 WL 3467385, at *1 (S.D. Cal. Dec. 3, 2025); Pico v. Noem, No. 25-CV-08002-JST, 2025 WL 3295382, at *3 (N.D. Cal. Nov. 26, 2025); P.T. v. Hermosillo, No. C25-2249-KKE, 2025 WL 3294988, at *2 n.1 (W.D. Wash. Nov. 26, 2025); Elias v. Knight, No. 1:25-CV-00594-BLW, 2025 WL 3228262, at *7 (D. Idaho Nov. 19, 2025); Ortiz v. Bernacke, No. 2:25-CV-01833-RFB-NJK, 2025 WL 3237291, at *3 (D. Nev. Nov. 19, 2025); Rico-Tapia v. Smith, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *6 (D. Haw. Oct. 10, 2025); Benitez v. Noem, No. 5:25-cv-02190 (C.D. Cal. Aug. 26, 2025); Rocha Rosado v. Figueroa, No. CV 25-02157, 2025 WL 2337099 (D. Ariz. Aug. 11, 2025), *report and recommendation adopted* 2025 WL 2349133 (D. Ariz. Aug. 13, 2025); Moraes v. Joyce, No. 2:25-CV-00583-JAW, 2025 WL 3459583, at *4 (D. Me. Dec. 2, 2025); Espinosa v. Noem, No. 1:25-CV-1396, 2025 WL 3455533, at *8 (W.D. Mich. Dec. 2, 2025); Moncada v. Noem, No. 6:25-CV-3354-MDH, 2025 WL 3458894, at *4 (W.D. Mo. Dec. 2, 2025); Soumare v. Jamison, No. CV 25-6490, 2025 WL 3461542, at *3 (E.D. Pa. Dec. 2, 2025); Andres v. Noem, No. CV H-25-5128, 2025 WL 3458893, at *4 (S.D. Tex. Dec. 2, 2025); Campos-Flores v. Bondi, No. 3:25CV797, 2025 WL 3461551, at *5 (E.D. Va. Dec. 2, 2025); Patel v. Harden, No. 2:25-CV-870-JES-NPM, 2025 WL 3442706, at *4 (M.D. Fla. Dec. 1, 2025); Sutuj v. Noem, No. 25-CV-17169-ESK, 2025 WL 3461508, at *1 (D.N.J. Dec. 1, 2025); Edahi v. Lewis, No. 4:25-CV-129-RGJ, 2025 WL 3466682 (W.D. Ky. Nov. 27, 2025); Rodriguez-Acurio v. Almodovar, No. 2:25-CV-6065 (NJC), 2025 WL 3314420, at *12 (E.D.N.Y. Nov. 28, 2025); Ruiz v. Baltazar, No. 1:25-CV-03642-CNS, 2025 WL 3294762, at *2 (D. Colo. Nov. 26, 2025); Gallegos Valenzuela v. Olson, No. 25-CV-13499, 2025 WL 3296042, at *6 (N.D. Ill. Nov. 26, 2025); Granados v. Noem, No. SA-25-CA-01464-XR, 2025 WL 3296314, at *6 (W.D. Tex. Nov. 26, 2025); Aguilar v. English, No. 3:25-CV-898 DRL-SJF, 2025 WL 3280219, at *8 (N.D. Ind. Nov. 25, 2025); Ambrocio v. Noem, No. 4:25CV3226, 2025 WL 3295530, at *6 (D. Neb. Nov. 25, 2025); Lopez v. Raycraft, No. 4:25CV2449, 2025 WL 3280344, at *4 (N.D. Ohio Nov. 25, 2025); Quituisaca v. Bondi, No. 6:25-CV-6527-EAW, 2025 WL 3264440, at *4 (W.D.N.Y. Nov. 24, 2025); Rodriguez v. Hyde, No. 25-CV-607-JJM-PAS, 2025 WL 3274606, at *2 (D.R.I. Nov. 25, 2025); Roman v. Olson, No. CV 25-169-DLB-CJS, 2025 WL 3268403, at *6 (E.D. Ky. Nov. 24, 2025); S.D.B.B. v. Johnson, No. 1:25-CV-882, 2025 WL 2845170, at *6 (M.D.N.C. Oct. 7, 2025); Castillo v. Loza, No. CV 25-1074 JB/JFR, 2025 WL 3251223, at *10 (D.N.M. Nov. 21, 2025); Carlos v. Bondi, No. 9:25-CV-00249-MJT-ZJH, 2025 WL 3252561, at *2 (E.D. Tex. Nov. 21, 2025); Padilla v. Galovich, No. 25-CV-863-JDP, 2025 WL 3251446, at *3 (W.D. Wis. Nov. 21, 2025); Mayancela v. FCI Berlin, No. 25-CV-348-LM-TSM, 2025 WL 3215638, at *2 (D.N.H. Nov. 18, 2025); Villa v. Normand,

Court finds that these previously "novel" arguments are no longer sustainable. Respondents acknowledge "that multiple district courts have disagreed with their interpretation of § 1225 as relevant here. . . ."  (Doc. 11 at 6 n.2.)

Respondents nonetheless contend that Petitioner is subject to 8 U.S.C. § 1225(b). (Doc. 11 at 7–9.) This argument is not persuasive. The record shows that the Government treated Petitioner as subject to 8 U.S.C. § 1226(a), which does not mandate detention, after it released her in 2024. Petitioner's notice to appear for removal proceedings states that the "Section 235(b)(1) [8 U.S.C. § 1225(b)(1)] order was vacated . . . ." (Doc. 11-1, Ex. 2.) Deportation officer Samuel Medina confirms that Petitioner was released on her own recognizance, (Doc. 11-1, Medina Decl. at ¶ 9), which means that she was released pursuant to § 1226(a). See Ortega-Cervantes v. Gonzales, 501 F.3d 1111, 1115 (9th Cir. 2007) ("It is apparent that the INS used the phrase 'release on recognizance' as another name for 'conditional parole' under § 1226(a)."). Additionally, when he was re-detained on October 6, 2025, ICE provided Petitioner a warrant which states that it was issued "pursuant to section[] 236" of the INA (which is codified at § 1226). (Doc. 11-1, Ex. 3.) Moreover, Respondents contend that Petitioner was not paroled pursuant to 8 U.S.C. § 1182(d)(5)(A). (See Doc. 11 at 1.) Parole pursuant to 8 U.S.C. § 1182(d)(5)(A) is the only mechanism by which "aliens detained under § 1225(b) may be released." Jennings v. Rodriguez, 583 U.S. 281, 300 (2018). Respondents' attempt to then change course and contend that § 1225(b) is the appropriate detention authority is contradicted by their own statements, arguments, and exhibits in the record.

---

No. 5:25-CV-100, 2025 WL 3188406, at *8 (S.D. Ga. Nov. 14, 2025); Delgado Avila v. Crowley, No. 2:25-CV-00533-MPB-MJD, 2025 WL 3171175, at *3 (S.D. Ind. Nov. 13, 2025); Yupangui v. Hale, No. 2:25-CV-884, 2025 WL 3207070, at *5 (D. Vt. Nov. 17, 2025); Chilel Chilel v. Sheehan, No. C25-4053-LTS-KEM, 2025 WL 3158617, at *2 (N.D. Iowa Nov. 12, 2025); Martinez v. Hyde, No. 25-CV-575-JJM-AEM, 2025 WL 3124025, at *2 (D.R.I. Nov. 7, 2025); Godinez-Lopez v. Ladwig, No. 2:25-CV-02962-SHL-ATC, 2025 WL 3047889, at *6 (W.D. Tenn. Oct. 31, 2025); Ramirez Valverde v. Olson, No. 25-CV-1502, 2025 WL 3022700, at *4 (E.D. Wis. Oct. 29, 2025); Del Cid v. Bondi, No. 3:25-CV-00304, 2025 WL 2985150, at *16 (W.D. Pa. Oct. 23, 2025); Puga v. Assistant Field Off. Dir., Krome N. Serv. Processing Ctr., No. 25-24535-CIV, 2025 WL 2938369, at *5 (S.D. Fla. Oct. 15, 2025); Lopez-Campos v. Raycraft, No. 2:25-cv-12486, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); Kostak v. Trump, No. 3:25-cv-01093-JE, Doc. 20 (W.D. La. Aug. 27, 2025); Leal-Hernandez v. Noem, No. 1:25-cv-02428-JRR, 2025 WL 2430025 (D. Md. Aug. 24, 2025); Romero v. Hyde, No. 25-11631-BEM, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); Aguilar Maldonado v. Olson, No. 25-cv-3142, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); Lopez Benitez v. Francis, No. 25-Civ-5937, 2025 WL 2267803 (S.D.N.Y. Aug. 8, 2025); Martinez v. Hyde, No. CV 25-11613-BEM, 2025 WL 2084238, at *9 (D. Mass. July 24, 2025).

Therefore, consistent with the overwhelming consensus rejecting Respondents' interpretation of section 1225(b)(2)(A), and adopting the persuasive reasoning of cases like Guerrero Lepe v. Andrews, No. 1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910 (E.D. Cal. Sept. 23, 2025), this Court concludes that section 1226(a), not section 1225(b)(2)(A), authorizes and dictates Respondents' authority to re-detain Petitioner.

The Court next turns to Petitioner's due process claim. Due process claims are analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." Garcia v. Andrews, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)).

**A. Petitioner Possesses a Protected Liberty Interest.**

A protected liberty interest may arise from a conditional release from physical restraint. Young v. Harper, 520 U.S. 143, 147–49 (1997). Even when a statute allows the Government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. See id. (due process requires pre-deprivation hearing before revocation of preparole); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (same, in probation context); Morrissey v. Brewer, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey." Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In Morrissey, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." Morrissey, 408 U.S. at 482. "Though the [Government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring, her "condition is very different from that of confinement in a prison." Id. "The parolee has relied on at least an implicit

promise that parole will be revoked only if he fails to live up to the parole conditions." Id. The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." Id. (quotations omitted). Therefore, a parolee possesses a protected interest in her "continued liberty." Id. at 481–84.

Immigration officials' October 31, 2024, release of Petitioner on her own recognizance pending her immigration proceedings was similar and allowed her to live in the country subject to supervision, but outside of custody, for the past year. And that time inherently allowed Petitioner to form "enduring attachments of normal life," including allowing her to live in the United States with her sister, becoming an active member of her community, and becoming gainfully employed. Id. at 482. The Court concludes that Petitioner's original release and time out of custody gave rise to a constitutionally protective liberty interest.

Because the Court concludes that Petitioner has a protected liberty interest in her release, see Guillermo M. R. v. Kaiser, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); Ortega v. Kaiser, No. 25-cv-05259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest), the Court must next determine what process is due before the Government may terminate Petitioner's liberty.

### B. The Mathews Factors Demonstrate Petitioner is Entitled to a Pre-Deprivation Hearing

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). The procedural protections required in a given situation may be evaluated using the Mathews v. Eldridge factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Id. (quoting Mathews v. Eldridge, 424 U.S. 319, 335 (1976)); see Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (applying Mathews factors in immigration detention context).

7

Turning to the first factor, Petitioner has a significant private interest in remaining free from detention. "Freedom from imprisonment—from Government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001). Petitioner had been out of custody for the past year, and during that time, lived with her sister, worked, and developed ties to the community. Her detention denies her that freedom.

Second, "the risk of an erroneous deprivation [of liberty] is high" where, as here, "[the Petitioner] has not received any bond or custody redetermination hearing." A.E. v. Andrews, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690; Padilla, 704 F. Supp. 3d at 1172. Petitioner has no criminal history. Although Respondents assert that Petitioner violated her release conditions, (see Doc. 11-1, Medina Decl. at ¶¶ 10–13), Petitioner disputes this, (see Doc. 7-2, Gomes Vilela Decl. at ¶¶ 3–5). Moreover, Respondents do not contend Petitioner is a flight risk or danger based on any such violation, and they acknowledge that Petitioner subsequently showed up for two in-person check-ins as required. (Id.) No neutral arbiter has determined whether the facts show that Petitioner is a flight risk or danger to the community. Given the absence of any procedural safeguards to determine if her detention was justified, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." A.E., 2025 WL 1424382, at *5.

Third, although the Government has a strong interest in enforcing the immigration laws, the Government's interest in re-detaining Petitioner without a hearing is "low." Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); Doe v. Becerra, No. 2:25-cv-00647-DJC-DMC, 2025 WL 691664, at *6 (E.D. Cal. March 3, 2025). In immigration court, custody hearings are routine and impose a "minimal" cost. Doe, 2025 WL 691664, at *6. "If the Government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." Ortega, 415 F. Supp. 3d at 970.

On balance, the Mathews factors show that *before* Respondents could lawfully re-detain Petitioner, she was entitled to a bond hearing. "'[T]he root requirement' of the Due Process Clause" is

"that an individual be given an opportunity for a hearing *before* [s]he is deprived of any significant protected interest." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (quoting Boddie v. Connecticut, 401 U.S. 371, 379 (1971)); see Zinermon, 494 U.S. at 127 ("[a]pplying [the Mathews] test, the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty"). And consistent with the numerous decisions of other courts in this circuit who have ruled on this issue, at such a hearing the burden would be on the Government to prove that Petitioner is a flight risk or danger to the community by clear and convincing evidence. See, e.g., Ramirez Clavijo v. Kaiser, No. 25-CV-06248-BLF, 2025 WL 2419263, at *4–6 (N.D. Cal. Aug. 21, 2025) (reaching the same conclusion); Garcia, 2025 WL 1927596, at *5 (same); Pinchi v. Noem, No. 25-CV-05632-RMI (RFL), 2025 WL 1853763, at *1 (N.D. Cal. July 4, 2025) (same); Ortega, 415 F. Supp. 3d at 970 (same); Doe, 2025 WL 691664, at *6 (same); Diaz v. Kaiser, No. 3:25-cv-05071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025) (same); Romero v. Kaiser, No. 22-cv-02508-TSH, 2022 WL 1443250, at *4 (N.D. Cal. May 6, 2022) (same); Vargas v. Jennings, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020) (same). Accordingly, Petitioner's detention is in violation of the Due Process Clause of the Fifth Amendment.

## IV.   CONCLUSION & RECOMMENDATION

Based on the foregoing, the Court concludes that Respondents violated Petitioner's due process rights by re-detaining Petitioner without first having conducted a pre-deprivation hearing before a neutral arbiter where the Government established that Petitioner was a flight risk or danger to the community. The Court hereby RECOMMENDS that the petition be GRANTED.[2]

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within twenty-one (21) days after being served with a copy of this Findings and Recommendation, a party may file written objections with the Court and serve a copy on all parties. Id. The document should be

---

[2] The Court notes that Petitioner has already been released, and Respondents have already been enjoined from re-detaining Petitioner absent demonstration by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker that Petitioner presents a danger to the community or a flight risk.

9

captioned, "Objections to Magistrate Judge's Findings and Recommendation" and shall not exceed fifteen (15) pages, except by leave of court with good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014). This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

IT IS SO ORDERED.

Dated:   **December 16, 2025**              /s/ *Sheila K. Oberto*
                                            UNITED STATES MAGISTRATE JUDGE